IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

GEOFFREY W. FREEMAN, and )
PIERRE A. MONTANEZ )
 )
    Plaintiffs, )
 ) Case No. 17−cv–0372−SMY
vs. )
 )
KEVIN REICHARD, )
JOSHUA SCHOENBECK, and )
ANDREW SPILLER, )
 )
    Defendants. )

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiffs Geoffrey Freeman and Pierre Montanez, inmates in Menard Correctional Center, bring this action for deprivations of their constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiffs request injunctive relief. This case is now before the Court for a preliminary review of the Amended Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>     (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>     (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers

to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Amended Complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A. Portions of this action are subject to summary dismissal.[1]

## The Amended Complaint

Defendant Reichard approached Freeman in 2013 and asked him to act as a confidential informant. (Doc. 1, p. 11). Freeman has consistently operated as an informant since that time. Freeman told Reichard that it would be helpful if he was celled with someone who spoke Spanish, and suggested Montanez, whom he knew through a veterans' group. (Doc. 5, p. 13). Freeman and Montanez were able to provide information about various Security Threat Groups ("STG"). (Doc. 5, pp. 33-36).

Freeman became aware through his work that the Menard Intelligence Department ("Intel") engaged in questionable practices such as: 1) soliciting cellmates to fabricate confessions to aid in high-profile cases; 2) attempting to intercept documents protected by

---

[1] Plaintiffs originally filed suit on April 11, 2017. (Doc. 1). However, their Complaint contained no request for relief. (Doc. 1). After warning Plaintiffs about the difficulty of proceeding as joint plaintiffs, the Court directed them to file an Amended Complaint with a proper request for relief. (Doc. 4). Plaintiffs filed their First Amended Complaint on April 17, 2017. (Doc. 5).

attorney-client privilege; 3) setting up prisoners to be attacked if they refused to cooperate with intel or as a favor to a STG; and 4) interceding to provide favorable treatment to other confidential informants, even when they engaged in violent behavior against other prisoners. (Doc. 1, pp. 11-20, 34). Freeman also learned that Intel would sometimes be aware of a threat to a prisoner in advance, but fail to act. In one instance, a prisoner lost both his eyes in an attack that intel had prior knowledge about. (Doc. 1, pp. 14-15)

For their safety and to aid them in their informant activities, Montanez and Freeman were continuously housed together from February 25, 2014 until April 14, 2014 and again from September 2014 until September 2016. (Doc. 5, pp. 13-14). Several times beginning in January 2016, Montanez and Freeman were sent to Stateville on a court writ and brought back information on STG activity in that institution. (Doc. 5, p. 33).

Sometime in the summer of 2016, Freeman informed Reichard that he would no longer work as a confidential informant because his criminal case was taking up too much of his time and attention. (Doc. 5, p. 37). When Freeman and Montanez went to Stateville on September 14, 2016, Freeman's special diet was terminated without explanation. *Id.* Freeman contacted Reichard about the diet, and Reichard told him that he was in very deep and couldn't just cut things off. *Id.*

Freeman returned to Menard on September 27, 2016, while Montanez stayed at Stateville. *Id.* He began hearing rumors identifying Montanez and himself as informants – Freeman ignored the rumors. (Doc. 5, pp. 37-38).

Freeman was attacked on October 6, 2016, but did not report the attack to staff because reporting would have the effect of confirming the snitch rumor. (Doc. 5, p. 38). He attempted to contact Reichard, but was unable to reach him. *Id.* On October 13, 2016, Freeman was attacked

by inmate Austin and both were written up and sent to segregation for fighting. *Id.* Freeman knew Austin worked with Reichard in the past and that Reichard was behind the attack. (Doc. 5, p. 17). Freeman alleges that Austin wanted to move to west house and needed to raise his aggression level to get placed there. Freeman asserts that he personally advised Austin to attack another inmate. *Id.*

Freeman left Menard on October 26, 2016 and did not return until January 11, 2017. (Doc. 5, p. 39). At that point, it became clear that Intel had leaked Freeman and Montanez's status as informants to members of various security threat groups. (Doc. 5, pp. 23, 39). Freeman sought protective custody on January 12, 2017. *Id.* Montanez returned to Menard on February 15, 2017, having no idea that his cover had been blown. (Doc. 5, p. 23). Freeman told Reichard that Montanez was a sitting duck and had family members on the outside do the same. *Id.* Montanez was placed on protective custody on February 19, 2017. *Id.* Freeman alleges that Reichard told him that Montanez would be his cellmate for safety reasons. *Id.* Instead, Montanez was placed with a Latin King member. *Id.* Montanez and Freeman filed an emergency grievance regarding the cell assignment on March 5, 2017. (Doc. 5, p. 24).

Freeman believes that Reichard solicited the Vice Lords to injure him and Montanez on behalf of Reichard, Schoebeck and Spiller. (Doc. 5, p. 21). Freeman and Montanez alerted Schoebeck of a breach. *Id.* They filed an emergency grievance regarding Montanez's placement with a STG inmate in protective custody on March 13, 2017. (Doc. 5, p. 24). That same day, Montanez was moved in with a Latin King member known as "Crazy Leggs" who has issues with Montanez because Montanez would not hide and hold weapons and drugs for him on the outside. (Doc. 5, p. 21). Freeman and Montanez told Spiller that they wanted to house together for safety reasons, but Spiller told them they were on their own. *Id.* Freeman also moved further

away from Montanez on March 13, 2017. (Doc. 5, p. 22). He alleges that this move made him unable to monitor the situation with Montanez. (Doc. 5, p. 24). As a result of the moves, Freeman and Montanez attempted to sign out of protective custody, but their requests were ignored. (Doc. 5, p. 25).

On March 15, 2017, Spiller told Freeman that he would be moved back in with Montanez, but this has not happened to date. (Doc. 5, p. 24). Defendants have threatened to transfer Freeman and Montanez to Pontiac, which Freeman alleges would increase the danger of their situation. (Doc. 5, pp. 25-26). Freeman asserts that he and Montanez pose a threat to Reichard, Schoenbeck and Spiller because they know about the workings of the Menard Intelligence Department, including some of its illegitimate practices. (Doc. 5, p. 26). Freeman believes that Reichard, Schoenbeck, and Spiller want he and Montanez dead. *Id.*

## Discussion

Based on the allegations of the Amended Complaint, the Court finds it convenient to divide the pro se action into 4 counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The following claims survive threshold review

> **Count 1** – Riechard, Spiller, and Schoenbeck failed to protect Freeman in violation of the Eighth Amendment when he was attacked twice in October 2016 after rumors circulated that he was a confidential informant ;
>
> **Count 2** – Reichard, Spiller, and Schoenbeck failed to protect Freeman and Montanez when they disclosed their relationship with IA to other inmates, forcing Freeman and Montanez to check into protective custody in January and February 2017.

Plaintiffs have also attempted to bring other Counts, but for the reasons elucidated below, these claims do not survive threshold review.

**Count 3** – Reichard, Spiller, and Schoenbeck violated Plaintiffs' First Amendment right of association when they refused to continue their past practice of celling Freeman and Montanez together;

**Count 4** – Reichard retaliated against Freeman and Montanez when they refused to continue acting as confidential informants in violation of the First Amendment by eliminating privileges Plaintiffs' had previously enjoyed and by disclosing their status as confidential informants to the prison population at large in an attempt to physically harm them.

**Count 1**

The Eighth Amendment is violated when prison officials are deliberately indifferent to a substantial risk of serious harm, including violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 828, 831-33 (1994). Allegations that a prison officer has provoked or persuaded other inmates to cause harm to a plaintiff support an inference that the officer attempted to inflict injury on the plaintiff in violation of the Eighth Amendment. *Merritte v. Kessel*, 561 F. App'x 546, 548 (7th Cir. 2014); *Dale v. Poston*, 548 F.3d 563, 570 (7th Cir. 2009); *see also Irving v. Dormire*, 519 F.3d 441, 449 (8th Cir. 2008) (officer's attempt to have other inmates attack plaintiff may violate Eighth Amendment, even where the plaintiff was not actually assaulted); *Northington v. Jackson*, 973 F.2d 1518, 1525 (10th Cir. 1992) (Eighth Amendment claim stated where guard "intended to do harm to [a prisoner] by inciting inmates to beat him[;]" guard told other inmates that plaintiff was a snitch).

Freeman alleges both that the defendants actually spread the story that he worked as a confidential informant among the other inmates, and that the second attack he suffered in October 2016 was intentionally arranged by Reichard. These allegations are more than sufficient to plausibly suggest that the defendants violated the Eighth Amendment as to Freeman during the fall of 2016.

### Count 2

Count 2 is a trickier proposition. As it relates to Freeman, the allegations with respect to Count 2 sufficiently establish that the events of the fall of 2016 were a continuing violation. Therefore, Count 2 survives as to Freeman. But the Amended Complaint does not allege that Montanez was ever attacked or that he suffered a physical injury as a result of the Defendants' conduct. There is case law that suggests this may foreclose his claim. *See Saunders v. Tourville*, 97 F. App'x 648, 649 (7th Cir. 2004) (finding a claim that an officer called an inmate a snitch was properly dismissed because an inmate "who suffers only a risk of physical harm has no compensable claim under the Eighth Amendment") (citing *Babcock v. White*, 102 F.3d 267, 272 (7th Cir. 1996)). Neither *Saunders* nor *Babcock* has been explicitly overruled, however, the Seventh Circuit has found to the contrary in more recent cases. *See Wright v. Miller*, 561 F. App'x 551, 555 (7th Cir. 2014) ("Even without an actual injury, the mere probability of the harm . . . can be sufficient to create liability.").

What is clear is that physical injury is not a prerequisite for injunctive relief, which is what the Plaintiffs have requested here. *Merritte*, 561 F. App'x at 548. Accordingly, both Plaintiffs will be permitted to proceed with **Count 2**, although compensatory damages are likely not available for Montanez's claim. 42 U.S.C. § 1997e(e).

### Count 3

Count 3 must be dismissed as legally frivolous. Plaintiffs allege that Defendants violated their right to free association when they ended their time together as cellmates. Prisoners enjoy a severely curtailed right of association based on their status because "association is among the rights least compatible with incarceration." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). It is the role of prison administrators to delineate legitimate penological goals and to decide how best

to achieve them and courts should show substantial deference to their professional judgment. *Id.* For that reason, courts have generally found that prisoners have no rights to associate with other gang members. *Westefer v. Snyder*, 422 F.3d 570, 575 (7th Cir. 2005). Similarly, courts have upheld a regulation barring visits from former prisoners against a First Amendment challenge. *Overton*, 539 U.S. at 134. Courts have also specifically found that prisoners have no right to a specific cell assignment or classification. *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) (citing *Montanye v. Haymes*, 427 U.S. 236 (1976)).

If Plaintiffs have no right to a specific cell placement, and the prison can constitutionally restrict prisoners' ability to associate with former inmates and gang members, then it follows that prisoners have no right to demand a specific cellmate. Intruding into specific housing assignments in a high-security prison like Menard is exactly the type interference courts endeavor to avoid. Obviously, if every prisoner in the State of Illinois were permitted to demand the housing assignment of his or her choice, chaos would ensue. Moreover, the Court has not identified any case establishing a right to a specific cellmate. As such, the Court concludes that Count 3 has no legal basis.

**Count 4**

To succeed on their First Amendment Retaliation claim, Plaintiffs must establish: 1) that they engaged in conduct protected by the First Amendment; 2) that they suffered a deprivation that would likely deter First Amendment activity in the future; and 3) that the protected conduct was a "motivating factor" for taking the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Significantly, as prison inmates, Plaintiffs' First Amendment rights are limited. In other words, "a prison inmate retains those First Amendment rights that are not inconsistent

with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).

The Seventh Circuit has not decided the specific question as to whether prisoners have a constitutional right to refuse to act as an informant. If that right exists, it would likely be grounded in a right not to speak under the First Amendment, which is the essence of Plaintiffs' claim. They allege that Reichard retaliated against them by eliminating certain privileges and by exposing them as informants to the general prison population, in an attempt to physically harm them.

Regardless whether Plaintiffs have a First Amendment right not to speak, prison officials conditioning certain privileges on Plaintiffs' willingness to act as informants would not amount to a constitutional violation. As is set forth in a recent decision from the Central District of Illinois:

> "Even if Plaintiff does have a First Amendment right to refuse to act as an informant, that right would still be subject to the legitimate penological concerns of the prison, just like any other First Amendment right in the prison setting. Shaw v. Murphy, 532 U.S. 223, 230 (2001)("Turner provides the test for evaluating prisoners' First Amendment challenges, . . ."). Prison officials have a legitimate interest in rooting out corruption, illegal activity, or the abuse of authority by prison employees. Insider information is an important way to uncover that misconduct. Therefore, conditioning the receipt of a prison job on acting as an informant is reasonably related to the legitimate government interest of preventing illegal or unethical conduct by prison employees."

*Clark v. Gipson*, 13-CV-3012, 15, nt.4 (C.D. Ill. Jan. 26, 2015)

Likewise, even if Plaintiffs had a constitutional right to refuse to be informants as a condition of retaining certain privileges, Reichard is entitled to qualified immunity as to that particular claim. Qualified immunity shields government officials from liability where "their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hardaway v. Meyerhoff,* 734 F.3d 740, 743 (7th Cir.

2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Courts employ a two-part test to determine whether a defendant is entitled to qualified immunity: 1) whether the conduct complained of violates the constitution; 2) whether the right was clearly established at the time the conduct occurred. *Hardaway* at 743 (citing *Pearson* at 232). The Court may analyze either prong first. *Pearson*, at 236.

Although qualified immunity is an affirmative defense, the burden of meeting the two-part test rests with the plaintiffs. *Eversole v. Steele*, 59 F.3d 710, 717 (7th Cir. 1995). And as encouraged to do so by the Supreme Court, this Court will resolve qualified immunity questions at the earliest stage possible of litigation. *See, Saucier v. Katz,* 533 U.S. 194, 202 (2001).

As previously noted, the Seventh Circuit has not addressed the specific issue as to whether a constitutional right not to be an informant exists in the prison context. There is no direct precedent affording a prison inmate informant such a right. See, *Clark* at 17-20. Thus, the right not to act as an informant as a condition of obtaining or retaining privileges is and was not clearly established and Reichard is protected by qualified immunity.

That said, Plaintiffs' claim that Reichard outed them as informants when they refused to continue acting as confidential informants, implicates the Eighth Amendment if by doing so, he exposed them to a substantial risk of serious harm. *See Merritte v. Kessel*, 561 Fed. Appx. 546 *3 (7 Cir. 2014)(not published in Federal Reporter)("Branding an inmate a snitch can expose him to serious harm and may violate the Eighth Amendment."). Although the record as to this allegation is undeveloped, Plaintiffs' allegations are sufficient to state a plausible claim at the pleading stage. Accordingly, Plaintiffs will be allowed to proceed on Count 4, amended as follows:

**Count 4** – Reichard, in violation of the Eighth Amendment, disclosed Freeman and Montanez's status as confidential informants to the prison population, at large in an attempt to physically harm them.

As a final note, Plaintiffs have requested equitable relief in this case, including 1) expedited discovery; 2) a protective order sealing this case; 3) appointed Counsel; 4) injunctive relief; and 5) other relief deemed just and necessary. (Doc. 5, p. 41). Plaintiffs' first 3 requests should be made by separate motion. Also, the Court does not construe Plaintiffs' request for injunctive relief as a request for preliminary injunction, as Plaintiffs did not include such a request in their original Complaint, and there is no language in the Complaint suggesting that they actually seek a preliminary injunction. If Plaintiffs' wish to pursue a preliminary injunction, they should file a motion requesting that relief as soon as practicable.

## Pending Motions

Plaintiffs' Motions to proceed in forma pauperis will be addressed by separate order. (Doc. 8) (Doc. 10).

Montanez's Motion for an order to allow Plaintiffs to comply with Doc. 4 is **DENIED**. (Doc. 12). Montanez requests that the Court enter an order to allow Plaintiffs to secure each other's signatures on court filings. (Doc. 12). This is not the first time Plaintiffs have requested this relief – Freeman filed a similar motion on April 26, 2017. (Doc. 6). The Court denied that motion and advised Plaintiffs that if litigating together proves too difficult, they should litigate their claims separately. (Doc. 7). Undaunted, Montanez filed the same motion 1 week later (Doc. 12).

Montanez characterizes his request as complying with the Court's Order of April 13, 2017. (Doc. 4). The Court's intention in that Order was to inform the Plaintiffs of certain difficulties that may arise by virtue of their decision to pursue this lawsuit as joint plaintiffs

instead of filing individually. (Doc. 4). That Order did not create any rights or grant Plaintiffs any special privileges. (Doc. 4).

## Disposition

**IT IS HEREBY ORDERED** that **Counts 1 and 2** survive threshold review. **Count 3** is dismissed with prejudice as legally frivolous. Plaintiffs' First Amendment claim assert in **Count 4** is dismissed with prejudice on qualified immunity grounds; Plaintiffs may proceed on their Eighth Amendment claim in Count 4 as amended herein. Montanez's Motion for an Order to Allow Plaintiffs to comply with Doc. 4 is **DENIED**. (Doc. 12).

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendants Reichard, Schoenbeck, and Spiller: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Reona J. Daly for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Reona J. Daly for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court,

who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: June 18, 2017**

                                                        __s/STACI M. YANDLE__
                                                       **U.S. District Judge**